FILED
2017 Aug-23 AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARRIS BROWN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES DEPARTMENT ) <br> OF VETERANS AFFAIRS, ) <br> ) <br> Defendant. ) | Case No. 2:17-cv-1181-TMP |

## MEMORANDUM OPINION and ORDER

This is an action under the Administrative Procedures Act, 5 U.S.C. § 551 ("APA"), in which the plaintiff seeks judicial review of the decision by the defendant U.S. Department of Veterans Affairs ("the VA") not to allow the taking of the deposition of Dr. Ajmal Khan, an employee of the VA. Mr. Brown is a plaintiff in a personal injury action in a California state court against the manufacturer of the prescription drug Risperdal, alleging that the drug cause him an injury. Mr. Brown seeks the deposition of Dr. Khan to establish that Dr. Khan lawfully prescribed Risperdal to him and to inquire into the specifics of any warnings or other information about the drug given to Dr. Khan by the

manufacturer. Pursuant to its *Tuohy* regulations,[1] the VA has declined to allow Dr. Khan to testify. Plaintiff faces a September 1, 2017, deadline for completion of discovery in the California action. Plaintiff now seeks review of the VA's refusal to allow the deposition, alleging that the VA's decision is arbitrary and capricious.

**I. Factual and Procedural Background**

The complaint in this action was filed originally in this court on July 14, 2017, invoking federal jurisdiction on the basis that it seeks a judicial review, under the APA, of administrative actions taken by a federal agency.[2] After the court held a conference with the parties on August 10, 2017,[3] the United States filed the informal administrative record relevant to this matter on August 15, 2017,

---

[1]  Pursuant to *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951), and the Federal Housekeeping Act, 5 U.S.C. § 301, administrative agencies are empowered to enact regulations dealing with such matters as how to respond to requests for information, records, and testimony from its employees. These regulations are often referred to as *Touhy* regulations.

[2]  *See Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.*, 443 F. App'x 407, 410 (11th Cir. 2011) ("[D]enial of Plaintiff's deposition request is agency action subject to judicial review under APA § 706(2)(A)); *Armstrong v. Arcanum Grp., Inc.,* 2017 WL 2257372, at *3 (D. Colo. Apr. 21, 2017) ("[T]he appropriate procedure for Plaintiff to challenge [an agency's] decision under its *Touhy* regulations is to pursue an action under the Administrative Procedure Act.").

[3]  The government was not served with process until August 3, 2017, which was returned to the court on August 8, 2017. (Doc. 10).

and filed its answer on August 21, 2017.[4] The plaintiff also has filed a brief supporting the need to obtain the deposition testimony of Dr. Khan.

Since at least November 2016, Mr. Brown has attempted to arrange for the taking of deposition testimony from Dr. Khan, as well as the production of certain documents from him. He contends that Dr. Khan treated him as a patient at the VA in Birmingham, prescribing Risperdal for him from 2005 to 2015. A subpoena for document production and testimony was issued by a California state court on November 30, 2016. In addition to Dr. Khan's testimony, it sought the production of the following categories of documents:

> **Request No. 1**:
> YOUR entire file pertaining to PLAINTIFF, Barris D. Brown, including but not limited to all medical records, radiology records, pathology records, correspondence, notes, billing records and telephone records.
> **Request No. 2**:
> YOUR complete and current resume or curriculum vitae, including a complete list of all publications YOU have authored or otherwise been involved in during the last twenty (20) years.
> **Request No.3**:
> Any communication with PLAINTIFFS, and/or their counsel, or any person YOU believe is acting on their behalf.
> **Request No.4**:
> All DOCUMENTS YOU have regarding the side effects of RISPERDAL (risperidone) provided to YOU, YOUR office or any of YOUR office staff by any of the Johnson & Johnson and Janssen entities, their officers, agents, representatives, or employees.

---

[4] Both parties and the court recognized the need for expedited handling of this matter due to the upcoming September 1 discovery cut-off in the California state-court action.

**Request No. 5**:
All DOCUMENTS you have regarding samples of RISPERDAL (risperidone) provided to YOU, YOUR office or any of YOUR office staff by sales representatives from any of the Johnson & Johnson and Janssen entities.

**Request No. 6**:
All DOCUMENTS in YOUR possession RELATING TO Risperdal and/or risperidone.

(Doc. 17, pp. 24-25). Through a series of emails, the plaintiff has communicated with the Office of General Counsel for the VA, attempting to arrange for the deposition. Counsel also forwarded to the VA an <u>Authorization to Disclose Health and Insurance Information Pursuant to 45 CFR 164.508 (HIPAA)</u> signed by the plaintiff on April 10, 2017.[5]

In response to the VA's repeated refusal to authorize Dr. Khan to produce documents or testify, the plaintiff submitted a formal request for authorization under the VA's *Touhy* regulations on April 24, 2017. (Doc. 17, pp. 71-73) On May 31, 2017, another subpoena, identical to the November 2016 subpoenaed was issued by the California court and attached to an application for issuance of a foreign subpoena filed in the Circuit Court of Jefferson County, Alabama, on June 14, 2017. That same day, the Clerk of the Alabama circuit court issued an order for Dr. Khan to appear and testify. (Doc. 17, pp. 84-91).

---

[5] It appears to be undisputed that Mr. Brown's VA medical files have been produced to his counsel; however, it is not clear that a properly certified copy has been produced for use as evidence.

Finally, on June 27, 2017, the VA formally responded to the plaintiff's request for testimony and production of documents. (Doc. 17, pp. 102-106). The VA refused to allow Dr. Khan to testify or produce documents, concluding that doing so would not "conserve the time of VA personnel for conducting their official duties…." The response noted that the VA is not directly involved in the California matter and has no "direct or substantial interest" in it. The agency also reasoned that "pertinent information regarding Dr. Khan's treatment of the patient at issue would be recorded in the patient's medical records. The medical records are available with the written authorization of the patient, or with an appropriate court order. I further note that you have the patient's VA medical records." Finally, the VA asserted that "no advance authorization was requested in accordance with the factors enumerated in 38 C.F.R. § 14.804. While you requested authorization after your first request was denied, you did not meet the regulatory criteria threshold for allowing any testimony."

**II. Testimony and Production of Documents under *Touhy***

The VA has promulgated regulations pursuant to the authority of the Federal Housekeeping Act, 5 U.SC. § 301[6] and *Touhy*. *Touhy* regulations "are relevant for

---

[6] Title 5 U.S.C. § 301 states:

internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena." *United States v. McGraw-Hill Companies, Inc.*, 2014 WL 12589667, at *2 (C.D. Cal. June 13, 2014), quoting *Watts v. Securities and Exchange Commission*, 482 F.3d 501, 509–10 (D.C. Cir. 2007). They do not, however, "create an independent privilege to withhold government information or shield federal employees from valid subpoenas." *Id.* quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994). Application of *Touhy* regulations under § 301 is intended only to provide an orderly process by which a government agency may determine whether a demand for information from it is valid and lawful. Such regulations by themselves do not create a privilege or otherwise authorize the withholding of information.[7]

The VA's *Touhy* regulations can be found at 38 C.F.R. § 14.800 *et seq.* and are intended to establish policy related to "[t]he production or disclosure of official information or records of the Department of Veterans Affairs," and "[t]he

---

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. *This section does not authorize withholding information from the public or limiting the availability of records to the public.*

(Italics added).

[7] It is crucial to note that the United States has not explicitly claimed any recognizable privilege with respect to the documents subpoenaed. While it argues that its *Touhy* regulations and/or the Privacy Act prohibit disclosure (see Doc. 17), it has not invoked any actual privilege. Under HIPAA, the plaintiff has authorized disclosure of his medical records.

6

testimony of present or former VA personnel relating to any official information acquired by any individual as part of that individual's performance of official duties, or by virtue of that individual's official status, in federal, state or other legal proceedings covered by these regulations." 38 C.F.R. § 14.800  Section 14.803 directs that decisions whether to allow a VA employee to testify or to produce documents or information are guided by the factors enumerated in § 14.804.  Of the fifteen decision factors set out there,[8] the VA identified in its decision letter of

---

[8] *See* 38 C.F.R. § 14.804, which states:

> In deciding whether to authorize the disclosure of VA records or information or the testimony of VA personnel, VA personnel responsible for making the decision should consider the following types of factors:
>
> (a) The need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA personnel for conducting their official duties concerning servicing the Nation's veteran population;
>
> (b) How the testimony or production of records would assist VA in performing its statutory duties;
>
> (c) Whether the disclosure of the records or presentation of testimony is necessary to prevent the perpetration of fraud or other injustice in the matter in question;
>
> (d) Whether the demand or request is unduly burdensome or otherwise inappropriate under the applicable court or administrative rules;
>
> (e) Whether the testimony or production of records, including release in *camera*, is appropriate or necessary under the rules of procedure governing the case or matter in which the demand or request arose, or under the relevant substantive law concerning privilege;
>
> (f) Whether the testimony or production of records would violate a statute, executive order, regulation or directive. (Where the production of a record or testimony as to the content of a record or about information contained in a record would violate a confidentiality statute's prohibition against disclosure, disclosure

7

June 27, 2017, only two factors bearing on its decision to deny permission for Dr. Khan to testify and produce documents related to his treatment of the plaintiff. The letter states:

---

will not be made. Examples of such statutes are the Privacy Act, 5 U.S.C. 552a, and sections 5701, 5705 and 7332 of title 38, United States Code.);

(g) Whether the testimony or production of records, except when in *camera* and necessary to assert a claim of privilege, would reveal information properly classified pursuant to applicable statutes or Executive Orders;

(h) Whether the testimony would interfere with ongoing law enforcement proceedings, compromise constitutional rights, compromise national security interests, hamper VA or private health care research activities, reveal sensitive patient or beneficiary information, interfere with patient care, disclose trade secrets or similarly confidential commercial or financial information or otherwise be inappropriate under the circumstances.

(i) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government favoring one litigant over another;

(j) Whether such release or testimony reasonably could be expected to result in the appearance of VA or the Federal government endorsing or supporting a position advocated by a party to the proceeding;

(k) The need to prevent the public's possible misconstruction of variances between personal opinions of VA personnel and VA or Federal policy.

(l) The need to minimize VA's possible involvement in issues unrelated to its mission;

(m) Whether the demand or request is within the authority of the party making it;

(n) Whether the demand or request is sufficiently specific to be answered;

(o) Other matters or concerns presented for consideration in making the decision.

38 C.F.R. § 14.804

> In reference to 38 C.F.R. § 14.801(b)(2)(I) it is noted that the Department of Veterans Affairs, the Secretary of Veterans Affairs, and the United States, are not parties to this litigation. Additionally, none of them has a direct and substantial interest. These regulations (specifically at § 14.808) essentially prohibit VA personnel from providing testimony without the special written authorization of the agency. This advance authorization should be requested in accordance with the factors enumerated in 38 C.F.R. § 14.804, which we have to date not received. If the Agency has not received a request and has not issued an authorization, the individual may not testify—he has been so directed. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) makes clear that where Dr. Khan has been directed pursuant to an undoubtedly valid regulation not to testify, a state court, or the federal court with derivative jurisdiction from the removal, is without power to compel him to testify. *See also Codd v. Saks Fifth Avenue*, No. 98 Civ. 6426 (MBM), 1998 WL 74402s *1 (S.D.N.Y. Oct. 26, 1998).
>
> Therefore, by regulation, the subpoenaed employee may not testify without written permission from the Department. 38 C.F.R. § 14.806.

(Doc. 17, p. 103). Thus, the VA seems to take the position that permission for Dr. Khan will not be granted because (1) an appropriate request for the testimony and information has not been made by the plaintiff under 38 C.F.R. § 14.804, and (2) that the VA and the government have no direct interest in the litigation in which the testimony and evidence is sought.[9]

---

[9] In another part of the letter, the VA also asserts that an important purpose of the regulations is "to conserve the time of VA personnel for conducting their official duties concerning servicing the Nation's veteran population." 38 C.F.R. § 14.804(a). It is not clear, however, whether the VA intends to assert inconvenience as an additional ground for denying permission to obtain Dr. Khan's testimony. In any event, this is a slender reed for supporting its decision as the deposition of Dr. Khan will be limited to three hours' duration. Even with gathering documents and preparing for the limited range of questions that can be asked, the total time expended by Dr. Khan in connection with this deposition testimony should not exceed eight hours, which is not a

Decisions made pursuant to an agency's *Touhy* regulations is reviewable through an action under the APA.

> A party challenging an agency's *Touhy*-based denial of a subpoena or request for testimony "must proceed under the APA, and the federal court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard." *Houston Business Journal*, 86 F.3d at 1212 n. 4; *In re Wash. Consulting Group v. Monroe*, 2000 WL 1195290, at *4 (D.D.C. July 24, 2000). The party challenging the denial bears the burden of showing that the denial was arbitrary and capricious, and must make a strong showing that the testimony is necessary. *Kauffman v. Dep't of Labor*, 1997 WL 825244, at *2 (E.D.Pa. Dec.19, 1997); *Wade v. Singer Co.*, 130 F.R.D. 89, 92 (N.D.Ill.1990).
>
> … In making its determination, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626, 106 S. Ct. 2101, 90 L. Ed. 2d 584 (1986); *Tourus Records*, 259 F.3d at 736. "[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983). Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971), abrogated on other grounds, *Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).

---

heavy burden of time compared to the need the plaintiff has for the testimony. It is ironic, indeed, that the VA does not consider supplying necessary information to veterans in need of it part of its "servicing of the Nation's veteran population."

*Bobreski v. U.S. Environmental Protection Agency*, 284 F. Supp. 2d 67, 73–74 (D.D.C. 2003). The Eleventh Circuit Court of Appeals has articulated a similar standard for review for agency decisions under *Touhy* regulations:

> "[T]he reviewing court shall... hold unlawful and set aside agency action, findings, and conclusions found to be... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Miccosukee Tribe* [*of Indians of Florida v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009)]. This "exceedingly deferential" standard examines "whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996).

*Westchester General Hospital, Inc. v. Dep't of Health & Human Services*, 443 F. App'x 407, 410 (11th Cir. 2011).

As the VA's first asserted ground for denial of Dr. Khan's deposition testimony, the court disagrees that the plaintiff has not made a sufficient request for the testimony under 38 C.F.R. § 14.805. Section 14.805 of the VA's *Touhy* regulations states:

> The request or demand for testimony or production of documents shall set forth in, or be accompanied by, an affidavit, or if that is not feasible, in, or accompanied by, a written statement by the party seeking the testimony or records or by the party's attorney, a summary of the nature and relevance of the testimony or records sought in the legal proceedings containing sufficient information for the responsible VA official to determine whether VA personnel should be allowed to

testify or records should be produced. Where the materials are considered insufficient to make the determination as described in § 14.807, the responsible VA official may ask the requester to provide additional information.

38 C.F.R. § 14.805. Just such a letter request was submitted by plaintiff's counsel on April 24, 2017. (Doc. 17, pp. 71-73). The letter summarizes that the testimony of Dr. Khan is sought because plaintiff must confirm that the doctor prescribed Risperdal during his treatment of the plaintiff at the VA Hospital in Birmingham, Alabama. It is certainly clear that, in his claim against the manufacturer of Risperdal, the plaintiff must establish the facts surrounding his ingestion of the drug. The letter states, "The information sought relates to what Dr. Khan knew about Riseperdal® when he prescribed it to Mr. Brown, and the questions posed will not seek information classified by the United States Government. The deposition will focus exclusively on Dr. Khan's knowledge about Risperdal®." In addition to the April 24 letter, there was extensive email correspondence between counsel for Mr. Brown and the VA concerning the need for Dr. Khan's testimony. In that email correspondence, plaintiff's counsel explained that the testimony was sought as part of a products liability action against the manufacturer of Risperdal, and that there was no allegation of any wrongdoing by Dr. Khan or the VA. (*See* Email dated April 11, 2017, from Dae Yeol Lee to James E. Miller, Jr., Doc. 17, p. 98).

The combination of the letter, the attached subpoena, and email correspondence plainly notified the VA of the nature of the information sought from Dr. Khan and the reasons it was needed. To advance his claim against the manufacturer of Risperdal, the plaintiff must establish the fact that he was prescribed Risperdal by a qualified physician. Also, under the Learned Intermediary Doctrine, he must show that the warnings given by the manufacturer to his physician were insufficient to put the physician on notice of the dangers associated with using the drug. Only Dr. Khan, the plaintiff's treating physician, could provide this *factual* evidence. The VA had enough information before it to apply the factors enumerated in § 14.804 and make a decision regarding the testimony of Dr. Khan. The first basis for denying the request for his testimony is not supported by the record and is an abuse of discretion.

The second ground identified by the VA for denying Dr. Khan's testimony is that the VA and the government have no direct or substantial interest in the private litigation between the plaintiff and the Risperdal manufacturer. Although the VA does not articulate this explicitly, it is arguable that this implicates several of the factors listed in § 14.804. For instance, it might be argued that allowing Dr. Khan to provide testimony expends VA resources on a purely private matter (§ 14.804(a)), or that his testimony may create the appearance that the VA favors one litigant over another or favors the position advocated by the plaintiff

(§ 14.804(i) and (j)).  Reaching such conclusions, however, is not supported by the record and amount to an abuse of discretion.  The evidence sought from Dr. Khan is entirely factual; the plaintiff does not seek to make him an expert witness or to obtain Dr. Khan's opinion about any medical causation issues involving Risperdal.  Dr. Khan is being asked to confirm that he prescribed Risperdal to the plaintiff and to describe the details of warnings or information he received concerning the use of Risperdal.  It is because Dr. Khan is alleged to have been the plaintiff's treating physician that it is contended that he has *factual* (not expert) evidence relevant and material to the California lawsuit.

> " 'For more than three centuries it has now been recognized as a fundamental maxim that the public... has a right to every man's evidence.  When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.' "  *United States v. Bryan*, 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)).

*Jaffee v. Redmond*, 518 U.S. 1, 9, 116 S. Ct. 1923, 1928, 135 L. Ed. 2d 337 (1996); *see also Adkins v. Christie*, 488 F.3d 1324, 1328 (11th Cir. 2007).  While the decision in *Touhy* recognized the authority of the heads of government agencies to enact regulations to provide an orderly process for handling requests for

information and evidence addressed to them, neither *Touhy* nor the Federal Housekeeping Act stands for the proposition that the government is broadly exempt from providing evidence.[10] Indeed, the Federal Housekeeping Act—the

---

[10] The decision in *Touhy* should not be over-read. The majority repeatedly emphasized the limited nature of their decision. The Court refused to address the limits of an agency superior's power to refuse to produce documents as order. The Court explained:

> We find it unnecessary, however, to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession, for the case as we understand it raises no question as to the power of the Attorney General himself to make such a refusal. The Attorney General was not before the trial court. It is true that his subordinate, Mr. McSwain, acted in accordance with the Attorney General's instructions and a department order. But we limit our examination to what this record shows, to wit, a refusal by a subordinate of the Department of Justice to submit papers to the court in response to its subpoena duces tecum on the ground that the subordinate is prohibited from making such submission by his superior through Order No. 3229. The validity of the superior's action is in issue only insofar as we must determine whether the Attorney General can validly withdraw from his subordinates the power to release department papers. Nor are we here concerned with the effect of a refusal to produce in a prosecution by the United States or with the right of a custodian of government papers to refuse to produce them on the ground that they are state secrets or that they would disclose the names of informants.

*U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–68, 71 S. Ct. 416, 419, 95 L. Ed. 417 (1951) (internal footnotes omitted). Later in the opinion, the majority wrote:

> Petitioner challenges the validity of the issue of the order under a legal doctrine which makes the head of a department rather than a court the determinator of the admissibility of evidence. In support of his argument that the Executive should not invade the Judicial sphere, petitioner cites Wigmore Evidence (3d ed.), § 2379, and *Marbury v. Madison*, 1 Cranch 137, 2 L. Ed. 60. But under this record we are concerned only with the validity of Order No. 3229. The constitutionality of the Attorney General's exercise of a determinative power as to whether or on what conditions or subject to what disadvantages to the Government he may refuse to produce government papers under his charge must await a factual situation that requires a ruling.

15

current legal authority under which *Touhy* regulations are promulgated—explicitly rejects the notion that the government is exempt from providing evidence, saying "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. There must be a good reason for an agency to withhold its evidence, and absent such a good reason, doing so is arbitrary, capricious, and an abuse of discretion. Courts certainly are required to give great deference to the determinations made by agencies concerning reasons for withholding evidence, but those reasons must make sense within the general context of the broad obligation to comply with the public's entitlement to "every man's evidence."

The fact that the VA has no direct or substantial interest in the private litigation between the plaintiff and the maker of Risperdal does not establish a reason for refusing to provide factual evidence relevant and material to that litigation. The same can be said of all disinterested witnesses. A witness's disinterest in someone else's lawsuit does not absolve him of providing his evidence. Also, because the evidence sought in this case is entirely factual,[11] it

---

*Id.*, 340 U.S. at 468–69, 71 S. Ct. 416, 419–20, 95 L. Ed. 417 (1951). While *Touhy* stands for the proposition that agency heads may promulgate regulations to deal with requests for agency information or testimony, it does not address the limits of that power.

[11] To be clear, the court agrees that Dr. Khan cannot be made to give expert or opinion evidence. He is only a fact witness as to his prescribing of Risperdal to the plaintiff and any warnings or advisories he received from the defendant manufacturer about the drug. He will not

cannot be perceived as the VA favoring one litigant or advocating that litigant's position, any more than the testimony of any neutral, disinterested witness. Moreover, making Dr. Khan available for a deposition on purely factual matters does not expend VA resources in a private matter anymore than the expense incurred by any disinterested witness. The resources of the VA are not being placed at the disposal of the private plaintiff, but only in compliance with a general duty to provide evidence. The determination to deny permission for Dr. Khan to testify concerning his factual knowledge was arbitrary, capricious, and an abuse of discretion.[12]

Finally, the VA's refusal to allow Dr. Khan to produce documents *in his possession*[13] concerning Risperdal is an abuse of discretion. Except for document Request No. 2 in the subpoena (which seeks production of Dr. Khan's publications

---

be required to offer any testimony that calls for the use of any specialized knowledge, skill, or experience within the confines of Fed. R. Evid. 702.

[12] In its email correspondence with plaintiff's counsel, the VA asserts that Dr. Khan knows nothing about the plaintiff's circumstances other than that he prescribed Risperdal to him and that this evidence can be obtained from the plaintiff's medical records alone. This is not entirely correct. In addition to establishing as a fact that Dr. Khan prescribed Risperdal to the plaintiff, the plaintiff also needs to explore the nature, scope, and contents of any warnings or advisories Dr. Khan received from the manufacturer of Risperdal. As mentioned already, under the Learned Intermediary Doctrine, necessary warnings related to drugs and medical devices are made to the treating physician, not the patient. This means that the plaintiff must explore, as a fact, whether Dr. Khan received any warnings or advisories regarding Risperdal, and their contents. Only Dr. Khan can supply this evidence concerning what he was told or read and what he knew about Risperdal when he prescribed it. That information is not likely reflected in medical records.

[13] The deposition subpoena *duces tecum* is addressed to and demands testimony and document production from Dr. Khan, not the VA itself. Thus, Dr. Khan is called on to produce documents *he* possesses or controls, not those possessed by the VA.

17

for the last twenty years, and will be stricken in this Order), the document requests made are narrow and reasonable. They seek the plaintiff's medical records, communications with plaintiff, and any information Dr. Khan received (especially from the manufacturer of the drug) concerning the uses of Risperdal, all of which are directly relevant to the California litigation. To the extent that HIPAA or the Privacy Act implicate these requests, the plaintiff has affirmatively waived his privacy rights under both statutes. The VA does not argue that producing these categories of documents from Dr. Khan is burdensome or expensive. The refusal to do so was arbitrary, capricious, and an abuse of discretion, and the VA will be directed to allow production of the documents.

### III. Conclusion and Order

Having concluded on the basis of the administrative record submitted by the government and the briefs filed by the parties that the VA's determination not to allow Dr. Khan to be deposed regarding his prescribing of Risperdal to the plaintiff and his knowledge of any warnings or advisories he received concerning the drug was arbitrary, capricious, and an abuse of discretion under the Administrative Procedures Act, it is ORDERED as follows:

1. The Secretary of the Department of Veterans Affairs is hereby DIRECTED to permit and allow Dr. Ajmal Khan to provide document production

pursuant to the subpoena *duces tecum* contained in the administrative record; provided, however, that document Request No. 2 is STRICKEN, and Dr. Khan may not produce any of his publications.

2. The Secretary of the Department of Veterans Affairs is hereby DIRECTED to permit and allow Dr. Ajmal Khan to provide deposition testimony, not exceeding three (3) hours in duration (excluding reasonable breaks), pursuant to the deposition subpoena contained in the administrative record. Said deposition is to be arranged and completed by not later than September 1, 2017, in Birmingham, Alabama, on a date and time otherwise mutually agreeable to the plaintiff and the VA.

3. The deposition testimony of Dr. Ajmal Khan shall be limited only to factual matters concerning his treatment of the plaintiff, his prescribing of Risperdal to the plaintiff, and his knowledge of any warnings, advisories, or other information he received from the manufacturer of Risperdal concerning use of the drug. Dr. Khan shall not be allowed to provide any expert or opinion testimony requiring specialized knowledge, skill, training, or experience within the meaning of Fed. R. Evid. 702, except as it may relate to his diagnoses of and treatment plans for the plaintiff. Dr. Khan shall not be allowed to express any opinion concerning medical causation related to Risperdal.

4. In all other respects, this action is DISMISSED WITH PREJUDICE.

DONE this 22nd day of August, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE